IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
vs. ) CRIMINAL NO. 95-353 JP
)
RICHARD OROSCO, )
a/k/a Ricardo Orosco, )
EDWINA CODDINGTON, )
DANIEL GOLAY, )
Gerardo OCHOA, )
and CARLOS ARMENDARIZ, )
)
        Defendants. )

95 NOV 13 PM 4: 53

CLERK-LAS CRUCES

### PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW REGARDING CO-CONSPIRATORS' STATEMENTS

COMES NOW the United States of America, by and through John J. Kelly, United States Attorney for the District of New Mexico, and Kelly H. Burnham, Assistant U. S. Attorney for said District, and for its proposed findings of fact and conclusions of law regarding the admissibility of co-conspirator statements, submits the following:

    A.    FINDINGS OF FACT

    1.    As to the existence of the conspiracy, the court should find as follows:

        a.    From on or about September, 1994, and continuing thereafter up to and including June 2, 1995, in Chaves County, in the State and District of New Mexico, and elsewhere, the defendants, RICHARD OROSCO, a/k/a Ricardo Orosco, EDWINA CODDINGTON, DANIEL GOLAY, GERARDO OCHOA, and CARLOS ARMENDARIZ, conspired and agreed together and with each other and with other persons whose names are known and unknown to commit the following

offenses against the United States, i.e.: Possession with Intent to Distribute more than five (5) Kilograms of Cocaine.

b) As may be testified to by United States Drug Enforcement Administration Special Agent Steve Woodson, other agents, and cooperating individuals, and as shown by admissions of indicted conspirators, members of the conspiracy made statements in furtherance of the conspiracy to distribute controlled substances, including but not limited to statements concerning the importation of controlled substances, the packaging of controlled substances, the safe transportation of controlled substances, the sale of controlled substances, the receipt of money for the sale of controlled substances, and the payment of money for controlled substances. Additional statements were made in furtherance of the conspiracy by the members of the conspiracy during this period to prevent the discovery of this conspiracy by law enforcement authorities. Statements made which detailed past conduct of the organization were made as an inducement to continued involvement in the conspiracy and to provide information as to the methods used by the conspirators.

2. As to the statements which will be offered, and by whom, and to whom the statements were made, the court should find as follows:

The United States cannot identify co-conspirator statements all inclusively as the memories of witnesses fade. Thus, as additional statements are identified, the court will make additional findings concerning the admissibility of these

2

statements as statements made in furtherance of the conspiracy. It is expected, however, that the statements concern the material generally set forth in the reports of Drug Enforcement Administration Special Agent Steve Woodson, and others, attached hereto and incorporated herein by reference.

    3. As to the facts supporting the membership of the above declarants in the conspiracy, the court finds as follows:

    a) The anticipated testimony of cooperating individuals, the results of surveillance, post-arrest statements, and the links among the conspirators discovered by law enforcement, including but not limited to documents linking the conspirators found by the agents, establish the membership in the conspiracy of the above-named defendants.

    b) The foregoing evidence establishes defendants' membership in the conspiracy and establishes the roles of other members of the conspiracy, including each other's.

    c) The testimony of Special Agent Woodson and other agents regarding his investigation of this case supporting the finding of the conspiracy alleged includes the following:

    B. <u>FACTS</u>

Crimestoppers' tips in Artesia, New Mexico, implicated Richard Orosco and Edwina Coddington in cocaine trafficking as early as September, 1994. Also, police records reveal that an undercover police officer purchased two ounces of cocaine from Orosco in Artesia.

3

On May 6, 1995, Crimestoppers' tips to the New Mexico State Police in Las Cruces indicated that Orosco and Coddington were involved in transportation of cocaine in campers from 4015 Johnson Lane, Las Cruces, New Mexico. Artesia Police Department subsequently received information that a load of cocaine was to be transported in a camper trailer from 4015 Johnson Lane during the last weekend of May through the first of June.

Surveillance was therefore begun at this address on May 28, 1995, through the date of arrest on June 1, 1995. Agents on surveillance saw Orosco, Coddington, Ochoa, Armendariz, Golay, and others at this address during this time period. They recognized Orosco and Coddington from previous contacts in Artesia. Photographed by agents during this time at or near 4015 Johnson Lane were Carlos Armendariz, Daniel Golay, Richard Orosco, and Edwina Coddington.

On May 29, 1995, agents on surveillance saw a white Ford van with Texas plates back into the garage. Arriving with it was a vehicle registered to Carlos Armendariz. The van was in the garage for less than two hours. The van and Armendariz' car left together. One to two hours after the van left the garage, a Blazer with a camper shell was maneuvered into the garage area.

On May 31, 1995, agents on surveillance saw Orosco manually move the camper shell closer to the garage doors. Orosco and Golay then manually pushed the camper shell into the garage itself and closed the garage door. At 9:45 p.m., Orosco and Golay hooked the camper to the Blazer and pulled the camper out of the

4

garage. At 10:07 p.m., Orosco left in the Blazer with the camper attached on what agents on surveillance termed a "test" or "heat" run. He then returned to 4015 Johnson Lane.

At 11:53 p.m., the Blazer and camper, occupied by several people, left the residence. Agents on surveillance also saw a Toyota pickup travelling with the Blazer on Highway 70. The Blazer and the pickup stopped together, and the driver of the pickup bought gas. The pickup then preceded the Blazer on Highway 70 towards Alamogordo. After going through the checkpoint outside Alamogordo, the driver of the Toyota pickup stopped at a convenience store in Alamogordo, used the telephone, and waited until the Blazer arrived in the area. Once the Blazer passed, the pickup left the convenience store and sped up to catch up with the Blazer. The Blazer stopped at a truck stop in Alamosa and waited until the pickup arrived. The two vehicles stopped together again at a convenience store in Hondo.

Thus, based on tips that a load of cocaine would be taken in a camper shell from a specific address on Johnson Lane in Las Cruces, New Mexico, to be delivered elsewhere in the United States, on surveillance of the Johnson Lane residence, on continuous surveillance of the participants as they travelled from Las Cruces towards Roswell, and on previous information about Orosco's and Coddington's activities, on June 1, 1995, at approximately 4:00 a.m., approximately five miles west of Roswell, New Mexico, on U.S. Highway 70, New Mexico States Police Officer E. J. Fouratt stopped the Blazer pulling the camper trailer, both bearing New Mexico

temporary licenses. The Blazer was driven by Rhonda Sieberlist. Passengers of the Blazer were identified as Richard Orosco, Daniel Golay, Edwina Coddington, and a five-year-old child. Based on the prior information and on surveillance, Officer Fouratt also stopped a 1989 Toyota pickup registered to Gerardo Ochoa, its driver and only occupant.

Edwina Coddington identified herself as the owner of the Blazer and camper and provided written consent allowing the officers to search the Blazer and trailer. Additionally, New Mexico State Police Agent Scott Williams inspected the Blazer and trailer with his narcotics-detecting dog. The dog alerted to the camper trailer. A subsequent search of the camper resulted in the seizure of approximately 500 kilograms of cocaine encased in fiberglass. A search of Ochoa's pickup incident to his arrest also resulted in the discovery of items seized as evidence.

After their arrest, Richard Orosco, Daniel Golay, Edwina Coddington, Rhonda Sieberlist and Gerardo Ochoa were transported to the New Mexico State Police Office in Roswell, New Mexico. After being advised of her rights, Coddington provided statements implicating herself, Orosco, Golay, Ochoa, and Armendariz in the transportation of the cocaine from 4015 Johnson Lane, Las Cruces, New Mexico to Chicago, Illinois. Coddington stated that she, Orosco and Golay resided at 4015 Johnson Lane, Las Cruces, New Mexico. The cocaine was delivered to their garage, where Coddington said Golay and Orosco encased it in fiberglass before loading it into the camper.

Coddington said she, Orosco, Golay, Ochoa and Sieberlist left Las Cruces, New Mexico around midnight, May 31, 1995. According to Coddington, Ochoa was driving the lead vehicle, the Toyota pickup, and was responsible for calling the source in Juarez, Mexico, to advise the source, Carlos Armendariz, of the progress of the trip. Coddington stated that on previous trips, Orosco would have to call the source at predesignated locations to insure that things were going well.

Coddington stated that an additional load of cocaine was expected to be delivered to 4015 Johnson Lane. Coddington also stated that there were currently documents concerning this operation as well as approximately one (1) pound of marijuana and possibly a smaller amount of cocaine located at 4015 Johnson Lane.

After being advised of his rights under the <u>Miranda</u> decision, Orosco invoked his rights. He thereafter gave a spontaneous statement, not in response to questioning, claiming to be solely responsible for the load of cocaine.

Agent Woodson reviewed documents seized from the Toyota pickup registered to Ochoa. One of theses items was a map of the United States on which five (5) cities were numbered on the route to Chicago, Illinois. Two of these cities were Ruidoso, New Mexico, and Amarillo, Texas. Agents on surveillance saw Ochoa use a pay telephone in Hondo, just outside of Ruidoso. Also, Coddington had stated that Amarillo was one of the five cities where Ochoa was to call the source of the cocaine to report on its progress into the United States.

7

A seventy-two hour lane check on the pickup revealed that it crossed from the Republic of Mexico into the United States on May 31, 1995, the date the transport of the cocaine from Las Cruces began. Lane checks on Carlos Armendariz' vehicle showed that he crossed into the United States on May 29, 1995, the date that surveillance agents saw the white van which was suspected to have delivered the cocaine to the Johnson Lane residence. Agents on surveillance saw Armendariz' vehicle arrived with the van.

Search warrants were sought and executed at the Johnson Lane address and at Ochoa's address on Encanto in Deming. As Coddington had indicated, at the Johnson Lane address, agents found additional fiberglass molds, a pound of marijuana, and cocaine residue. At the Encanto address, agents found documents linked to Carlos Armendariz. Also found were rental receipts for a storage shed in Mesa, Arizona. Follow-up at this storage shed revealed that Armendariz had stored fiberglass forms identical to those encasing the cocaine and those observed at the Johnson Lane address.

Agents have also learned that in September, 1994, Defendant Ochoa was encountered by law enforcement officers in Brinkley, Arkansas, driving a red pick-up truck with a specific license number. The truck was towing a flat-bed trailer. Defendant Orosco sold cocaine to an undercover officer in 1995, and when he sold the cocaine he was driving a red pick-up truck bearing the same license number as the truck driven by Ochoa.

8

4. As to the facts supporting whether each proposed statement was made during the course of the conspiracy, the court incorporates its findings in the foregoing paragraphs by reference and further finds that the identified statements were made between September, 1994, and the 2nd day of June, 1995, the term of the conspiracy alleged in the indictment.

C. CONCLUSIONS OF LAW:

The court should find that the United States has proved, by a preponderance of the evidence, that: (1) a conspiracy existed; (2) that Defendants were members of that conspiracy; (3) that the proffered statements were made in and during the course of that conspiracy; and (4) that the proffered statements were made in furtherance of the conspiracy. Therefore, the co-conspirator statements which have been identified by the United States are admissible as co-conspirator statements made in furtherance of the conspiracy pursuant to Fed.R. Evid. 801(d)(2)(E).

WHEREFORE, the United States prays that the court find the foregoing proffered co-conspirator statements admissible at the trial of Defendants.

Respectfully submitted,

JOHN J. KELLY
United States Attorney

*[signature]*

KELLY H. BURNHAM
Assistant U.S. Attorney
505 S. Main, Suite 121
Loretto Towne Centre
Las Cruces, New Mexico  88001
(505) 527-6875

I HEREBY CERTIFY that a true copy
of the foregoing pleading was mailed
to opposing counsel of record,
Gary Hill, Ralph Binford, William Fry,
and Bernard Panetta, this 13th day of
~~February~~ November, 1995.

_____
KELLY H. BURNHAM
Assistant U.S. Attorney

/jjg

U. S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | | | | Page 1 of 6 | |
|---|---|---|---|---|---|
| 1. Program Code HID100 | 2. Cross File | Related Files | 3. File No. MS-95-0095 | 4. G-DEP Identifier ICC11 | |
| 5. By: S/A Steven Woodson At: Las Cruces, NM | | | 6. File Title ARMENDARIZ, Carlos et al | | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared June 8, 1995 | | |
| 9. Other Officers: NMSP, FBI S/A Kintigh, Artesia Police Department and TFO L. Chavez | | | | | |
| 10. Report Re: Arrests and Acquisition of 507 Kilograms of Cocaine (Exhibit 1) | | | | | |

SYNOPSIS:

Between May 28, 1995 and June 1, 1995, NMSP, Artesia Police Department and TFO Larry Chavez conducted surveillance on a suspected "stash house", located at 4015 Johnson Lane, Las Cruces, New Mexico. During the late evening of May 31, 1995 and early morning of June 1, 1995, agents surveilled a black Chevrolet Blazer, pulling a white Jayco camper, and a black 1989 Toyota pickup after it left the residence. These vehicles were stopped on U.S. Highway 70, near Roswell, New Mexico. A subsequent consent search resulted in the seizure of 507 kilograms of cocaine encased in fiberglass and concealed in the camper. Subsequent to this seizure, NMSP arrested Richard OROSCO, Edwina CODDINGTON, Rhonda SIEBERLIST, Danny GOLAY and Gerardo OCHOA.

DETAILS:

1. On June 1, 1995 at approximately 8:00 a.m., S/A Woodson responded to a request by NMSP and FBI regarding the above seizure. S/A Woodson arrived at the NMSP office, Roswell, New Mexico and was advised of the basic circumstances surrounding the arrests. S/A Woodson was advised that all the individuals were advised of their rights. OCHOA declined to make any statements. OROSCO stated that all the cocaine was his and that no one else knew about the cocaine. OROSCO also requested to speak with an attorney. CODDINGTON provided NMSP Sgt. Larry Rogers with a taped statement, which is detailed below.

2. S/A Woodson and FBI S/A Kintigh inventoried and inspected the seized vehicles. S/A Woodson and NMSP Sgt. Rogers then interviewed Danny GOLAY. Prior to the interview, Sgt. Rogers advised GOLAY of his rights verbally and in writing. GOLAY stated that he understood his rights and was willing to talk to agents. GOLAY stated that he resided in Gillette, Wyoming until two or three months ago when he moved to Artesia, New Mexico to live with his uncle, Terry Geschwender. GOLAY met OROSCO and CODDINGTON through Geschwender. During the week of May 22, 1995, GOLAY's uncle moved to Hobbs, New Mexico. GOLAY then moved to 4015 Johnson Lane, Las Cruces, New Mexico with OROSCO and CODDINGTON. GOLAY stated that his job was to babysit the children and in exchange GOLAY received room and board. GOLAY stated that prior to moving to Las Cruces, New Mexico, GOLAY loaned his 1979 Ford Thunderbird to OROSCO. This car was seized from OROSCO in Alamogordo, New Mexico for a traffic violation. Subsequently, GOLAY and OROSCO went to Alamogordo, New Mexico to retrieve the car. Upon the return trip, GOLAY was stopped and OROSCO was arrested for an outstanding warrant. GOLAY did admit seeing fiberglass in the garage during the last two days, but stated that he did not assist in packaging any cocaine.

| 11. Distribution: Division See Page 6 | 12. Signature (Agent) Steven Woodson, Special Agent | 13. Date 6/9/95 |
|---|---|---|
| District | 14. Approved (Name and Title) James Baker, A/Group Supervisor | 15. Date 7/5/95 |
| Other | | |

DEA Form - 6 1bf-06/22/95
(Aug. 1994)

DEA SENSITIVE
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

U. S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION (Continuation) | 1. File No. MS-95-0095 | 2. G-DEP Identifier ICC11 |
|---|---|---|
| | 3. File Title ARMENDARIZ, Carlos et al | |
| 4. Page 2 of 6 | | |
| 5. Program Code HID100 | 6. Date Prepared June 8, 1995 | |

3. S/A Woodson reviewed the tape recorded statement obtained by Sgt. Rogers and personally talked to CODDINGTON. Sgt. Rogers previously advised CODDINGTON of her rights, which CODDINGTON acknowledged. CODDINGTON stated that she and OROSCO reside at 4015 Johnson Lane, Las Cruces, New Mexico, which they rent for $800.00 per month. CODDINGTON described herself as a housewife and OROSCO as a drug runner. CODDINGTON stated that prior to moving to Las Cruces, New Mexico, OROSCO worked for United Postal Service and Matador Oil Company. Possibly in September or October, 1994, OROSCO met Alberto (LNU), who is the "boss" from Juarez, Mexico. CODDINGTON believed that Alberto's (LNU) last name was ARMENDARIZ, but was not sure. CODDINGTON stated that she first met Alberto (LNU) approximately three months ago in Juarez, Mexico and last saw him during the weekend of May 27, 1995. Present at the last meeting was Alberto (LNU), "GATO", a "sidekick" of Alberto (LNU), Carlos ARMENDARIZ, OROSCO and herself. During this meeting, OROSCO and Alberto (LNU) discussed the delivery of the cocaine to their residence in Las Cruces, New Mexico, where it was to be packaged and delivered. CODDINGTON stated that OROSCO told her the load would be cocaine, but did not tell her how much. OROSCO told her that someone would bring the cocaine or he would have to go to El Paso, Texas to get it. CODDINGTON described Carlos ARMENDARIZ as a go-between for OROSCO and Alberto (LNU). ARMENDARIZ assisted in arranging the loads of cocaine. CODDINGTON stated that this cocaine arrived at their residence on May 29, 1995 in a white van, along with ARMENDARIZ, OROSCO and another individual. (Note: Surveillance observed a white Chevrolet Astro van, bearing Texas license PTV-87Y and a blue Chevrolet Celebrity, bearing New Mexico license 722-GSJ. Texas license PTV-87Y is registered to Luis HERNANDEZ, 9300 Montana, El Paso, Texas, on a 1988 Chevrolet. New Mexico license 722-GSJ is registered to Carlos E. ARMENDARIZ, P.O. Box 521, Columbus, New Mexico, on a 1988 Chevrolet. A USCS lane check revealed that this vehicle crossed from Juarez, Mexico to El Paso, Texas on May 29, 1995.) CODDINGTON stated that this cocaine was to be transported to Chicago, Illinois and OROSCO was to be paid $55,000.00 for transporting. CODDINGTON stated that SIEBERLIST probably knew what was going on, but had no real involvement. CODDINGTON stated that GOLAY was in the garage area while the cocaine was packaged and resided in the room off of the garage. CODDINGTON stated that other than assisting in packaging the cocaine, GOLAY's role was that of a babysitter. CODDINGTON stated that SIEBERLIST and GOLAY were not involved like OROSCO. CODDINGTON stated that she did not know the name of the person (OCHOA) driving the Toyota pickup. CODDINGTON believed that they called him "Tio". CODDINGTON stated that she met OCHOA during the transportation of a previous load, possibly around Christmas of 1994.

4. CODDINGTON stated that OROSCO began transporting controlled substances for Alberto (LNU) and Carlos ARMENDARIZ around October, 1994. OROSCO and CODDINGTON took the first load to Garden City, Kansas. CODDINGTON remained in a motel and OROSCO made the delivery to unknown persons. OROSCO received $15,000.00 for the transportation of this load. The second load was around Christmas, 1994. CODDINGTON and OROSCO drove to Joliet, Illinois, where they obtained a motel, possibly called "Ben Hur". CODDINGTON believed that this load was delivered to someone in Chicago, Illinois. OROSCO was paid $25,000.00 for the transportation. Again, CODDINGTON stayed in the motel room while OROSCO made the arrangements for the delivery. On one of these trips, OCHOA ran "interference" in front of them. CODDINGTON stated that on the previous trip to Chicago, Illinois, they checked in at Amarillo, Texas; Oklahoma City, Oklahoma; Kansas City, Missouri, a town whose name she could not recall, and then Chicago, Illinois. CODDINGTON stated that they would dial a code, indicating the trip was going okay. CODDINGTON stated that on this trip, she believed they were actually going to stay somewhere in Indiana before delivering the cocaine to Chicago, Illinois. She further stated that OCHOA was responsible for calling

DEA Form - 6a (Aug. 1994)   lbf-06/22/95   DEA SENSITIVE   Drug Enforcement Administration   1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

U. S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION (Continuation) | 1. File No. MS-95-0095 | 2. G-DEP Identifier ICC11 |
|---|---|---|
| | 3. File Title ARMENDARIZ, Carlos et al | |
| 4. Page 3 of 6 | | |
| 5. Program Code HID100 | 6. Date Prepared June 8, 1995 | |

Alberto (LNU) with the progress of the trip. (NOTE: Surveillance observed OCHOA make a telephone call from a pay telephone on the early morning of June 1, 1995. A map seized from OCHOA's truck had the number 1 placed near Hondo, New Mexico as the first check in location.)

5. CODDINGTON stated that on May 29, 1995, she saw this cocaine in the back of the white Chevrolet van at her residence in Las Cruces, New Mexico. She described how the cocaine was placed into prefabricated fiberglass forms, which OROSCO manufactured, and was sealed with fiberglass. CODDINGTON stated that ARMENDARIZ provided the materials for the making of the fiberglass, but did not know where it was purchased. CODDINGTON also stated that the trailers on the gooseneck and Dodge pickup parked at her residence were provided for transporting cocaine. CODDINGTON stated that an individual known as "DEE" (subsequently identified as Dee TOLMAN), who runs a radiator shop in Deming, New Mexico, manufactured the false compartments in the flatbed trailers. The fiberglass forms were designed to fit into the compartments.

6. CODDINGTON agreed to place recorded telephone calls to Carlos ARMENDARIZ and Alberto (LNU). At approximately 3:47 p.m., CODDINGTON telephoned ARMENDARIZ on his pager and left a call-back number. A person CODDINGTON identified as ARMENDARIZ telephoned shortly after the page. ARMENDARIZ stated that he was in Juarez, Mexico. CODDINGTON explained that they had been arrested and that she and SEIBERLIST had been released. ARMENDARIZ asked where they were arrested, stating that he would call Alberto (LNU) and telephone her back.

7. At approximately 4:27 p.m., CODDINGTON received a telephone call from Alberto (LNU). Alberto (LNU) asked "What happened?" CODDINGTON explained their arrest and stated that the "guys" were being taken to jail. Alberto (LNU) asked which other guy she was talking about and asked if there were other people with them. CODDINGTON stated no and explained that she had been talking to ARMENDARIZ. CODDINGTON stated that they needed money and Alberto (LNU) stated that he could not send somebody to wire the money right now. Alberto (LNU) told CODDINGTON to keep in touch "with the other number you dialed" (meaning Carlos ARMENDARIZ). Alberto (LNU) also told CODDINGTON not to use names on the telephone because the telephones "were funny". Alberto (LNU) told CODDINGTON to borrow money from someone and "we'll pay them the money back". CODDINGTON asked if ARMENDARIZ could go to their house to clean it up. Alberto (LNU) stated that he did not think so. Alberto (LNU) asked if the "dog" was used. CODDINGTON stated that it was. Alberto (LNU) told CODDINGTON to be careful and "let's see how we could figure it out".

8. CODDINGTON also stated that OROSCO sold marijuana and possibly cocaine in the Artesia, New Mexico area. CODDINGTON collected $1,600.00 from an individual known as "TANK" on May 30, 1995, which OROSCO directly stated belonged to him.

9. After processing, OROSCO, GOLAY and OCHOA were transported to the Las Cruces Resident Office (LCRO) and subsequently incarcerated at the Dona Ana County Detention Facility in Las Cruces, New Mexico. On June 2, 1995, all three defendants were presented before a U.S. Magistrate on the charge of Possession with Intent to Distribute Cocaine. They were ordered held without bond. CODDINGTON, SIEBERLIST and the child were released pending further investigation.

CUSTODY OF EXHIBITS:

1. Exhibit 1 is 507 kilograms of cocaine encased in eleven fiberglass containers. Exhibit 1 was seized from a 1994 Jayco camper being pulled by a black 1991 Chevrolet Blazer, both registered to Edwina CODDINGTON, on June 1, 1995, near Roswell, New Mexico.

DEA Form - 6a (Aug. 1994)     1bf-06/22/95     DEA SENSITIVE  Drug Enforcement Administration     1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

U. S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION  (Continuation) | 1. File No. MS-95-0095 | 2. G-DEP Identifier ICC11 |
|---|---|---|
| | 3. File Title ARMENDARIZ, Carlos et al | |
| 4. Page 4 of 6 | | |
| 5. Program Code KID100 | 6. Date Prepared June 8, 1995 | |

On June 1, 1995, G/S Phil George and TFO D. Garcia transported Exhibit 1 to the LCRO, where it was secured. On June 9, 1995, S/A Woodson, TFO Chavez and FBI S/As processed Exhibit 1, removing it from the containers. Exhibit 1 was secured at the LCRO until June 16, 1995, when S/A Woodson transported Exhibit 1 to the South Central Regional Laboratory.

2. Exhibit N-1 is 1991 Chevrolet S-10 Blazer, black-in-color, VIN: 1GCT18Z5M8224182 registered to Edwina CODDINGTON, 4015 Johnson Lane, Las Cruces, New Mexico. Exhibit N-1 was seized on June 1, 1995, near Roswell, New Mexico by the NMSP for transportation of narcotics. On June 1, 1995, S/A Woodson took custody of Exhibit N-1 and issued the notice of seizure to CODDINGTON. S/A Woodson secured Exhibit N-1 at the NMSP office in Roswell, New Mexico until released to the USMS pending forfeiture.

3. Exhibit N-2 is a 1994 Jayco Eagle-10 pop-up camper, white-in-color, VIN: 1UJAJ01F2R1FJ1207, registered to Edwina CODDINGTON, 4015 Johnson Lane, Las Cruces, New Mexico. Exhibit N-2 was seized by the NMSP, near Roswell, New Mexico on June 1, 1995 after 507 kilograms of cocaine were discovered inside. Exhibit N-2 was being towed by Exhibit N-1. On June 1, 1995, S/A Woodson took custody of Exhibit N-2 and issued the notice of seizure to CODDINGTON. Exhibit N-2 was secured at the NMSP office, Roswell, New Mexico until released to the USMS pending forfeiture.

4. Exhibit N-3 is a 1989 Toyota pickup, black-in-color, bearing New Mexico license 665-GSG, VIN: JT4VN13D1K0010969, registered to Gerardo OCHOA, 1312 Encanto Circle, Deming, New Mexico. Exhibit N-3 was seized from OCHOA by NMSP on June 1, 1995, Roswell, New Mexico for facilitating the transportation of 507 kilograms of cocaine. S/A Woodson took custody of Exhibit N-3 on June 1, 1995 and issued OCHOA the notice of seizure and an inventory of items left in the truck. Exhibit N-3 was secured at the NMSP office, Roswell, New Mexico until released to the USMS pending forfeiture.

5. Exhibit N-9 is $1,156.00 in U.S. currency seized from Gerardo OCHOA on June 1, 1995 by NMSP. On June 1, 1995, S/A Woodson took custody of Exhibit N-9 from NMSP Agent K. Rogers. S/A Woodson subsequently converted Exhibit N-9 to Cashier's check #338163 and released Exhibit N-9 to the USMS pending forfeiture.

6. Exhibit N-10 is $1,493.00 in U.S. currency seized from Edwina CODDINGTON on June 1, 1995 by NMSP. On June 1, 1995, S/A Woodson took custody of Exhibit N-10 from NMSP Agent K. Rogers. S/A Woodson subsequently converted Exhibit N-10 to Cashier's check #338164 and released Exhibit N-10 to the USMS pending forfeiture.

7. Exhibit N-11 is a sealed cardboard box containing the black plastic wrap removed from the eleven fiberglass containers containing Exhibit 1 on June 9, 1995. S/A Woodson secured Exhibit N-11 at the LCRO until June 16, 1995, when transported to the South Central Regional Laboratory for fingerprint analysis.

8. Exhibit N-17 is one of the eleven fiberglass containers, which contained Exhibit 1. Exhibit N-17 was seized from the 1994 Jayco camper on June 1, 1995, near Roswell, New Mexico. S/A Woodson took custody of Exhibit N-17 on the same date and secured it at the LCRO. On June 9, 1995, S/A Woodson and TFO Chavez removed a portion of Exhibit 1 from Exhibit N-17. S/A Woodson secured Exhibit N-17 at the LCRO until released to the LCRO Non-Drug Evidence Custodian.

9. Exhibit N-18 is a HSEE containing a ziplock bag containing gloves and tools seized from the Chevrolet Blazer on June 1, 1995. Exhibit N-18 was seized by S/A Woodson, who maintained custody of it until released to the LCRO Non-Drug Evidence Custodian.

DEA Form - 6a  lbf-06/22/95  **DEA SENSITIVE**
(Aug. 1994)  Drug Enforcement Administration  1 Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

U. S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION (Continuation) | 1. File No. MS-95-0095 | 2. G-DEP Identifier ICC11 |
|---|---|---|
| | 3. File Title ARMENDARIZ, Carlos et al | |
| 4. Page 5 of 6 | | |
| 5. Program Code HID100 | 6. Date Prepared June 8, 1995 | |

10. Exhibit N-19 is documents seized from the Chevrolet Blazer on June 1, 1995 in Roswell, New Mexico. S/A Woodson maintained custody of Exhibit N-19 until released to the LCRO Non-Drug Evidence Custodian.

11. Exhibit N-20 is U.S. map and documents seized from the Toyota pickup by S/A Woodson on June 1, 1995 in Roswell, New Mexico. S/A Woodson maintained custody of Exhibit N-20 until released to the LCRO Non-Drug Evidence Custodian.

12. Exhibit N-21 is notebooks seized from the Toyota pickup in Roswell, New Mexico on June 1, 1995. S/A Woodson took custody of Exhibit N-21 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

13. Exhibit N-22 is a pager bearing (800) 946-4646 and PIN #1175796 seized from OCHOA in Roswell, New Mexico on June 1, 1995. S/A Woodson took custody of Exhibit N-22 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

14. Exhibit N-23 is a pager bearing (800) 946-4646 and PIN #1175796 seized from OCHOA in Roswell, New Mexico on June 1, 1995. S/A Woodson took custody of Exhibit N-23 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

15. Exhibit N-24 is a matchbook with a number of 52116662 seized from OCHOA in Roswell, New Mexico on June 1, 1995. S/A Woodson took custody of Exhibit N-24 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

16. Exhibit N-25 is a key to the Jayco camper seized in Roswell, New Mexico on June 1, 1995. S/A Woodson took custody of Exhibit N-25 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

17. Exhibit N-26 is a cassette tape of the interview of CODDINGTON by NMSP Sgt. Larry Rogers on June 1, 1995. S/A Woodson took custody of Exhibit N-26 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

18. Exhibit N-27 is a cassette tape of telephone calls between CODDINGTON, ARMENDARIZ and Alberto (LNU) on June 1, 1995. S/A Woodson took custody of Exhibit N-27 and maintained custody until it was released to the LCRO Non-Drug Evidence Custodian.

19. Exhibit N-28 is pages from CODDINGTON's telephone book seized on June 1, 1995 by NMSP Agent K. Rogers. S/A Woodson took custody of Exhibit N-28 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

20. Exhibit N-29 is a written consent to search provided by Edwina CODDINGTON on June 1, 1995. Exhibit N-29 was received by NMSP Officer Pouratt on June 1, 1995 and subsequently released to S/A Woodson. S/A Woodson maintained custody of Exhibit N-29 until released to the LCRO Non-Drug Evidence Custodian.

21. Exhibit N-30 is papers seized from CODDINGTON by NMSP Agent K. Rogers on June 1, 1995 in Roswell, New Mexico. S/A Woodson took custody of Exhibit N-30 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

22. Exhibit N-31 is papers seized from OCHOA by NMSP Agent K. Rogers on June 1, 1995 in Roswell, New Mexico. S/A Woodson took custody of Exhibit N-31 and maintained custody until released to the LCRO Non-Drug Evidence Custodian.

DEA Form - 6a (Aug. 1994)  lbf-06/22/95

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.